UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

UNITED STATES OF AMERICA,                    CRIMINAL NO. 05-436 (DSD/JSM)

       Plaintiff,

v.                                                      REPORT   AND   RECOMMENDATION

JAVAR DALE LOVE,

       Defendant.


JANIE S. MAYERON, United States Magistrate Judge

      The above matter came on before the undersigned upon defendant's Motion to Suppress Statements and Evidence [Docket No. 25] and Motion to Suppress Evidence obtained as a Result of Search and Seizure [Docket No. 26].

      Assistant United States Attorney David Steinkamp appeared on behalf of the Government; Lee Johnson, Esq. appeared on behalf of defendant Javar Dale Love who was personally present.  This matter has been referred to the undersigned Magistrate Judge for a Report and Recommendation by the District Court pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 72.1(c).

      Based upon the pleadings and exhibits submitted at the hearing, and pre-hearing submissions, it is recommended that:

      1.  Defendant's Motion to Suppress Statements and Evidence [Docket No. 25] be **DENIED**; and

      2.  Defendant Motion to Suppress Evidence obtained as a Result of Search and Seizure [Docket No. 26] be **DENIED** as it was withdrawn by defendant's counsel at the motions hearing.

## I.  FACTUAL BACKGROUND

An Indictment was returned against defendant Javar Dale Love ("Love") charging him with one count of Aiding and Abetting Possession with Intent to Distribute Cocaine Base ("Crack"), in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(A), and 18 U.S.C. § 2; and one count of Possession with Intent to Distribute Cocaine Base, in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(C).

Love is only challenging the September 6, 2005 search warrant issued for the premises located at 3346 Newton Avenue North, Minneapolis, Minnesota.  At the hearing on the pretrial motions, the parties stipulated that Love's motion to suppress evidence obtained from the search warrants should be decided solely based on the four corners of the search warrant application.  As such, the only issue presented to the Court in connection with Love's motion is whether probable cause existed on the face of the search warrant application.

The facts underlying the present motion are as follows: During the course of the investigation of Love Special Agent Jean E. LaPlace, Jr, with the FBI, applied for a search warrant of the residence located at 3346 Newton Avenue North, Minneapolis, Minnesota.  See Gov't Ex. 1.

The search warrant application described the property sought by its warrant as follows:

> 1. Controlled substances, including but not limited to cocaine and crack/cocaine.
>
> 2. Books, records, receipts, notes, ledgers and other papers relating to the transportation, ordering, purchase, or distribution of controlled substances.

3.  Any and all receipts, invoices, notes, journals, ledgers, and other documents relating to the sale or disposition of proceeds from the sale of narcotics.

4.  Address and/or telephone books and papers reflecting the names, addresses and/or telephone numbers of individuals or businesses.

5.  Books, records, receipts, bank statements and records, money drafts, letters of credit, money orders and cashier check receipts, passbooks, bank checks and other items evidencing the obtaining, secreting, transfer, concealment, and/or expenditure money.

6.  United States currency, financial instruments, including but not limited to stocks and bonds.

7.  Scales, cutting agents, packing materials used in the distribution of controlled substances.

8.  Firearms and ammunition.

9.  Items to show construction possession of the above contraband such as utility bills, rent receipts, lease agreements, letters, personal identification, bills or other written materials tending to show the constructive possession of the above items and their locations.

Gov't Ex. 1.

The relevant portion of Special Agent LaPlace's affidavit, accompanying the 3346

Newton Avenue North search warrant, described the basis for the warrant as follows:

3.  During the week of August 22, 2005, the CRI, acting at the direction and under the supervision of the officers, made telephonic contact with a person known as "Too Booty" (whose real name was positively identified as Renardo Smith) and ordered a quantity of crack cocaine. During this telephone conversation, SMITH agreed to sell to the CRI approximately one ounce of crack cocaine at which a time and meet location were arranged.

4.  Later on August 22, approximately one hour prior to the pre arranged time set for the undercover controlled drug purchase, surveillance was initiated at 3346 Newton

Avenue North, Minneapolis, Minnesota. Surveillance officers observed a black Chevrolet Caprice, bearing Minnesota License plate number FRC 124, driving down an alley and parking in the driveway in front of the garage of 3346 Newton Avenue North, Minneapolis. The garage has the numbers of 3346 next to the garage door. In addition the garage has matching color to the house in that the garage is white with gray trim. The black Chevrolet Caprice was occupied by two people.

5. The black Chevrolet Caprice was observed leaving the alley of 3346 Newton Avenue North, Minneapolis and driving down the side streets of Minneapolis. While driving to the predesignated meet location, the driver of the black Chevrolet Caprice began to make quick turns and taking side streets instead of taking the most direct route to the meet location. The law enforcement officers involved in the surveillance believed that the driver of the black Chevrolet Caprice was surveillance cautious and engaged in counter-surveillance driving techniques.

6. The CRI subsequently met with the individuals in the black Chevrolet Caprice at the pre designated meet location. At that pre-arranged meet location, SMITH sold a quantity of crack cocaine to the CRI for an amount of pre-recorded Government buy funds. Immediately following the drug transaction, the CRI met with law enforcement officers and provided the suspected crack cocaine to them.

7. On August 24, 2005, the suspected crack cocaine was brought to the Minneapolis Department of Health and Family Support Laboratory for testing. The suspected crack cocaine preliminarily tested positive for the presence of crack cocaine.

8. During the week of August 29, 2005, the CRI, acting at the direction and under the supervision of the officers, made telephonic contact with SMITH. During this telephone conversation, the CRI ordered a quantity of crack cocaine from SMITH. SMITH agreed and told the CRI to meet him at the pre designated location to conduct the undercover drug transaction.

9. Later on August 29, surveillance was initiated at 3346 Newton Avenue North, Minneapolis. During the surveillance, the black Chevrolet Caprice was observed

backing out of the garage behind 3346 Newton Avenue North.  The black Chevrolet Caprice was then observed driving directly to the pre designated meet location where the undercover drug transaction with CRI was scheduled to take place.  SMITH was only one person in the black Chevrolet Caprice.

10. The CRI subsequently met with SMITH at the pre designated meet location.  At that pre-arranged meet location, SMITH sold a quantity of crack cocaine to the CRI for an amount of pre-recorded Government but [sic] funds. Immediately following the drug transaction, the CRI met with law enforcement officers and provided the suspected crack cocaine tha [sic] SMITH had sold to the CRI.

11. The law enforcement officers subsequently brought the suspected crack cocaine to the Minneapolis Department of Health and Family Support Laboratory.  The suspected crack cocaine preliminarily tested positive for the presence of crack cocaine.

12.  On or about August 30, 2005, MPD officers conducted a traffic stop on the black Chevrolet Caprice, as a result of an officer observing the person driving the black Chevrolet Caprice as Paris PATTON, a person known to have a PC pick up hold.  During the traffic stop, Renardo SMITH, Marcus WHITE, and Jonard MCDANIEL were all passengers in the black Chevrolet Caprice.  During a protective sweep of the car, a .45 Glock semi-automatic handgun with an extended magazine and another magazine were located under the passenger seat of the car.

\* \* \*

15.  3346 Newton Avenue North, Minneapolis, Minnesota, is described as a white stucco two story house with gray trim around the windows, doors and soffits.  There is a white metal storm door on the front of  the house, with a white front door.  The shingles on the house are gray.  The address is on the left side of the front door in a vertical position.  There is a side door on the North side of the house.  There are awnings over both doors.  The detached garage is white siding with gray trim and the address of 3346 is located on the right side of the garage door.

16. Based upon all the foregoing, your Affiant states that there is probable cause to believe that the following items will be found at the address of 3346 Newton Avenue North, Minneapolis, Minnesota: narcotics, including but not limited to crack cocaine; journals, ledgers, notes, books, and other documents relating to the sale or disposition of proceeds from the sale of narcotics; items of drug trafficking paraphernalia including scales to weigh narcotics and packaging materials used for the sale of narcotics; proceeds from the sale of controlled substances; and firearms.

Id.

On September 6, 2005, the search warrant for 3346 Newton Avenue North was issued by United States Magistrate Judge Arthur J. Boylan.  The search warrant was executed by Special Agent LaPlace on September 7, 2005.  Special Agent LaPlace took into custody from the 3346 Newton Avenue North location, ammunition, digital scales, various documents, cell phones, cash, wallets, identification, two baggies with what appeared to be crack cocaine, one baggie of suspected heroin, a grocery bag with what appeared to be crack cocaine, electronic equipment, an assault rifle, and other miscellaneous items.

## II. **DISCUSSION**

### A. Probable Cause

Ordinarily, searches pursuant to a warrant are reviewed to determine if there was probable cause for the search in the search warrant application and affidavit.  Illinois v. Gates, 462 U.S. 213, 236 (1983).  "Probable cause exists when, given the totality of the circumstances, a reasonable person could believe there is a fair probability that contraband or evidence of a crime would be found in a particular place."  United States v. Fladten, 230 F.3d 1083, 1085 (8th Cir. 2000).

The task of a court issuing a search warrant is "simply to make a practical, common sense decision whether, given all the circumstances set forth in the affidavit . . . including the 'veracity' and 'basis of knowledge' of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place." <u>Gates</u>, 462 U.S. at 238.  In reviewing this decision of the issuing court, the duty of the reviewing court is simply to ensure that the issuing court had a substantial basis for concluding that probable cause existed.  <u>Id.</u> at 238-39 (citation omitted).  However, "[u]nder the Fourth Amendment, law enforcement officers may not obtain a search warrant through statements which are intentionally or recklessly false."  <u>United States v. Hollis</u>, 245 F.3d 671, 673 (8th Cir. 2001) (citation omitted).

Love argues that the search warrant affidavit fails to provide a nexus between Smith's illegal activities and the residence.  This Court disagrees.  The search warrant application states that during the week of August 22, 2005 a CRI, acting under the direction and supervision of police, set a up a transaction with Renardo Smith ("Smith") to purchase an ounce of crack cocaine at a predetermined place and time.  The warrant also stated that police conducted surveillance on August 22, 2005 on the 3346 Newton Avenue North residence, approximately an hour before the prearranged buy time.[1] Officers noticed a black Chevrolet Caprice parked in front of the garage of the 3346 Newton Avenue North residence.  This Court notes that the garage had the same numerical address as the 3346 Netwon Avenue North house and matched the color and

---

[1]     While Special Agent LaPlace did not explain in the Affidavit why police were conducting surveillance at the 3346 Netwon Avenue North location, this Court assumes it was because they had reason to believe they would observe activities that would have some connection to this address.

trim of the house.  After the Chevrolet Caprice left the alley of the 3346 Newton Avenue North residence, the occupants of the car met with the CRI and Smith sold the CRI an ounce of crack cocaine.  In addition, the search warrant application stated that during the week of August 29, 2005, the CRI, acting under the direction and supervision of police, set up another buy of crack cocaine from Smith at a predetermined location.  On August 29, 2005, the police conducted surveillance of the 3346 Newton Avenue North residence.  This time, the black Chevrolet Caprice was observed backing out of the garage of the 3346 Newton Avenue North residence and traveling to the predesginated meet location for the sale.  Again, Smith, who was the lone occupant in the vehicle, sold crack cocaine to the CRI at the predesginated meet location.

Given all of this information, a reasonable person could conclude that there was evidence of a crime located at the 3346 Newton Avenue North, Minneapolis, Minnesota, residence.  The affidavit set forth facts establishing drug-dealing activities and tied them to the 3346 Newton Avenue North residence.  In particular, the supporting Affidavit contains information that Smith, on two separate occasions, either left outside of the garage or backed out of the garage located at the 3346 Newton Avenue North residence, then traveled to a predetermined location, and sold narcotics to the CRI. Therefore, based upon the totality of the circumstances, this Court finds that substantial evidence existed to support the finding of probable cause to issue the search warrant for the items described at the location of 3346 Newton Avenue North, Minneapolis, Minnesota.

## B. <u>Leon</u> Exception

Even if this Court had determined that the search warrant application at issue lacked the necessary probable cause required for the issuance of the search warrant, the evidence obtained pursuant to the search warrant is still admissible based on the good faith exception established in <u>United States v. Leon</u>, 468 U.S. 897 (1984).

In <u>Leon</u>, the court stated that "'searches pursuant to a warrant will rarely require any deep inquiry into reasonableness,' for 'a warrant issued by a magistrate normally suffices to establish' that a law enforcement officer has 'acted in good faith in conducting the search.'" <u>Leon</u>, 468 U.S. at 922 (citations omitted).  However, the <u>Leon</u> Court noted that there are certain instances when "the purpose of the exclusionary rule—deterring police misconduct—will not be served by suppressing illegally seized evidence." <u>United States v. Martin</u>, 833 F.2d 752, 755 (8th Cir. 1987); <u>Leon</u>, 468 U.S. at 922-23.  "When a police officer acts in an objectively reasonable manner in reliance on a subsequently invalidated search warrant, there is no rational reason for suppressing the fruits of the search." <u>Martin</u>, 833 F.2d at 755.  The Court's "good-faith inquiry is confined to the objectively ascertainable question whether a reasonably well trained officer would have known that the search was illegal despite the magistrate's authorization." <u>Leon</u>, 468 U.S. at 923 n.23.

The <u>Leon</u> Court found four instances when suppression remained appropriate.  First, suppression is appropriate "if the magistrate or judge in issuing a warrant was misled by information in an affidavit that the affiant knew was false or would have known was false except for his reckless disregard of the truth." <u>Leon</u>, 468 U.S. at 923.  Second, suppression is appropriate "where the issuing magistrate wholly abandoned his

judicial role in the manner condemned in <u>Lo-Ji Sales, Inc. v. New York</u>, 442 U.S. 319, 99 S.Ct. 2319, 60 L.Ed.2d 920 (1979); in such circumstances, no reasonably well trained officer should rely on the warrant." <u>Id.</u>  Third, the court found that an officer would not "manifest objective good faith in relying on a warrant based on an affidavit 'so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable.'"  <u>Id.</u> (quoting <u>Brown v. Illinois</u>, 422 U.S. 590, at 610-611, (Powell, J., concurring in part).  Finally, the court found that "depending on the circumstances of the particular case, a warrant may be so facially deficient—i.e., in failing to particularize the place to be searched or the things to be seized—that the executing officers cannot reasonably presume it to be valid."  <u>Id.</u>; <u>see also</u>, <u>United States v. Marion</u>, 238 F.3d 965, 969 (8th Cir. 2001) (discussing four situations identified in <u>Leon</u> in which an officer's reliance on a warrant would be unreasonable); <u>United States v. Simpkins</u>, 914 F.2d 1054, 1057 (8th Cir. 1990) (same).

There was no evidence presented to this Court to suggest that any of the instances precluding the application of the <u>Leon</u> good faith exception, apply to the reliance by Special Agent LaPlace on the search warrant issued by a United States Magistrate Judge.  Therefore, even if the search warrant issued by the issuing court was found to lack the required probable cause to support a request for the 3346 Newton Avenue North search warrant, the good-faith reliance of Special Agent LaPlace, as the officer who prepared and executed the warrant, validates the search.

For all of the reasons stated above, this Court recommends that Love's motion to suppress evidence obtained from the search warrants of 3346 Newton Avenue North, Minneapolis, Minnesota be denied.

III.     **RECOMMENDATION**

For the reasons set forth above, it is recommended that:

1.  Defendant's Motion to Suppress Statements and Evidence [Docket No. 25] be

**DENIED**; and

2.  Defendant Motion to Suppress Evidence obtained as a Result of Search and

Seizure [Docket No. 26] be **DENIED** as it was withdrawn by defendant's counsel at the

motions hearing.

Dated:     February 10, 2006

s/ *Janie S. Mayeron*
JANIE S. MAYERON
United States Magistrate Judge


Pursuant to Local Rule 72.1(c)(2), any party may object to this Report and Recommendation by filing with the Clerk of Court, and by serving upon all parties on or before **February 20, 2006** a copy of this Report, written objections which specifically identify the portions of the Report to which objections are made and the bases for each objection.

Unless the parties stipulate that the District Court is not required by 28 U.S.C. § 636 to review a transcript of the hearing in order to resolve all objections made to this Report and Recommendations, the party making the objections shall timely order and file a complete transcript of the hearing on or before **February 20, 2006**.